HALL, Judge.
This is a suit for workmen’s compensation benefits brought by a young woman *44 who on January 29, 1963 while acting within the course and scope of her employment as a secretary-file clerk stacking up boxes of old files slipped and fell from a chair upon which she was standing and fell onto a typewriter desk striking her abdomen on the right side. She filed this suit on January 29, 1965 against her employer’s compensation insurer seeking to recover compensation payments for total and permanent disability plus medical and hospital benefits. (No question of prescription is involved, prescription having been interrupted by a previous suit filed in the United States Court for the Eastern District of Louisiana). During the course of the trial plaintiff was permitted to amend her petition to include in the alternative a claim for the permanent impairment of a physical function to wit: the function of reproduction.
From a judgment awarding her compensation at the rate of $35.00 per week for a period of eight (8) weeks, subject to a credit for $80.00 previously paid, plaintiff prosecutes this appeal. Defendant neither appealed nor answered the appeal.
Plaintiff was examined by Dr. Louis Gallo on February 1, 1963 in the emergency room of the Southern Baptist Hospital in New Orleans, and was admitted to the hospital on February 3, 1963. After conducting a series of tests she was operated on by Dr. Gallo on February 8, 1963. During this operation Dr. Gallo scraped the uterus vaginally and then did an exploratory operation and found a hemorrhagic cyst of the right ovary about the size of a large orange, some cystic formations on the left ovary, and chronic pelvic inflammatory disease with blockage of both fallopian tubes. He removed the right hemorrhagic ovarian cyst together with a portion of the right ovary. He also removed a small part of the left ovary and did a plastic repair on both tubes.
Plaintiff was discharged from the hospital on February 14, 1963 and returned to work on March 22, 1963. Defendant paid $80.00 to plaintiff representing two weeks and two days compensation at the rate of $35.00 per week. Defendant also paid a total of $1,128.90 for all expenses incurred in this first operation.
One year later, on March 21, 1964, Dr. Gallo performed a “D and C” on plaintiff, which is simply a scraping of the uterus vaginally and is not considered a major operation. On March 25, 1964 he again did major surgery. During this operation Dr. Gallo found that plaintiff had more cystic formations on both ovaries and found that the tubes had blocked up again which indicated to him “a progression of the preexisting inflammatory condition of the pelvis.” He found the right tube and ovary were too diseased to do anything else but remove them. He repaired the left tube a second time “because this lady wanted — was very desirous of becoming pregnant.” Otherwise Dr. Gallo stated he would have removed everything.
Following the first operation plaintiff was left with approximately 14 of the right ovary and most of the left ovary remaining. Following the last operation none of the right ovary and less than 1/2 of the left ovary remained.
Plaintiff contends that her fall on January 29, 1963 necessitated all three operations by Dr. Gallo, and that as a result of the operations she is now permanently and totally disabled, or in the alternative that she has an impairment of her function of reproduction.
When Dr. Gallo first examined plaintiff on February 1, 1963, three days after the accident, he did not find any black and blue marks on her abdomen or any objective signs of trauma whatever. He made no mention of her fall in any of his reports found in the hospital record, although he remembers that she told him about it. When he operated on her the first time (February 8, 1963) he found that she had cervicitis, prolapse of the uterus, bilateral hydrosalpinx, all chronic diseases, none of which according to Dr. Gallo could possibly be caused by the fall. He also found the hemorrhagic cyst of the right ovary which *45 he testified could possibly have been caused by the fall. He also testified that had he not known of the fall he would not have been surprised by his findings and that everything that was wrong with her could have been absolutely normal progress uninterrupted by trauma.
Dr. Gallo further testified that neither the second nor the third operation was in any way caused, aggravated or contributed to by the fall.
Dr. S. R. Staggers, Director of Pathology at Southern Baptist Hospital, was the examining pathologist in the first operation and testified on behalf of defendant. He stated that he had never seen trauma cause a hemorrhagic ovarian cyst and that it was very unlikely such a thing could happen. He also testified that none of the other difficulties plaintiff had at the time of the first operation were caused by trauma.
Dr. Dan W. Beacham, a gynecologist and obstetrician examined plaintiff on July IS, 1963 after the first operation. He testified that he had never seen, heard of or read about a hemorrhagic ovarian cyst being caused by trauma and that none of the conditions found by him during his examination were caused by trauma. He also testified that he had examined the medical record of the second and third operations and stated emphatically that in his opinion there was absolutely no relation between the operations and plaintiff’s fall.
Our review of the record convinces us that there is no causal connection between plaintiff’s fall and the conditions necessitating the second and third operations. While we have grave doubts whether the hemorrhagic ovarian cyst which was removed in the first operation was caused or aggravated by trauma, the Trial Judge evidently awarded plaintiff 8 weeks compensation on the basis of Dr. Gallo’s testimony (contrary to that of the other medical witnesses) that it was possible for a hemorrhagic ovarian cyst to be caused thereby. Defendant, as stated, neither appealed nor answered plaintiff’s appeal.
Plaintiff claims she is totally and permanently disabled. However there is no evidence in the record that she is in anyway disabled. She testified that she is presently employed as a billing clerk and billing machine operator but did not testify that she was unable to perform her duties or that she worked in pain.
Plaintiff argues that Dr. Gallo’s first operative procedure somehow caused the conditions necessitating the subsequent operations, but Dr. Gallo testified to the contrary, and the record is bare of any evidence to substantiate plaintiff’s argument.
Plaintiff claims in the alternative that she now has an impairment of a physical function, that of reproduction, and that she should be awarded compensation accordingly.
Dr. Gallo and Dr. Beacham both testified that plaintiff can conceive even though all of one ovary and part of the other ovary have been removed. As a matter of fact plaintiff herself testified that she has conceived twice since the last operation, and while both pregnancies resulted in miscarriages plaintiff testified that her physician told her the trouble was that her uterus was not strong enough to hold a baby. We find no evidence in the record to sustain plaintiff’s claim that the accident caused the impairment of a physical function.
Following rendition of the judgment plaintiff’s counsel applied for a new trial based on the allegation that he had in his files two letters addressed to his client by Dr. Gallo on September 26, 1964 and a letter addressed to counsel by Dr. Gallo on October 4, 1963 which tended to contradict certain parts of the doctor’s testimony. . No satisfactory explanation was made why these letters were not produced during the trial nor why Dr. Gallo was not questioned about them. The Trial Judge .denied the new trial citing Easter v. Davis, La.App., 153 So.2d 463 wherein this Court said:
“Sworn declarations from the witness stand should prevail over unsworn state *46 ments which might seemingly contradict the testimony, and it is equally true that the unsworn statement does not prove the recitals thereof when the witness is not under oath.”
We find no error in the Trial Court’s action in denying a new trial.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.